# J. W. WESTPHAL v. MIDWAY SECURITIES COMPANY AND OTHERS.[1]

March 16, 1928.

No. 26,457.

**Correct to strike out reply as sham.**
> The record amply justified the court in striking plaintiff's reply as sham and directing judgment for defendants.

Pleading, 31 Cyc. p. 625 n. 96.

Action in the district court for Ramsey county by the plaintiff as a stockholder of the defendant securities company for an accounting, for the appointment of a receiver, and for the dissolution of the corporation. From a judgment for defendants, Michael, J. plaintiff appealed. Affirmed.

*Westphal & Ochu,* for appellant.

*Ambrose Tighe,* for respondents.

TAYLOR, C.

Plaintiff's reply to defendants' answer was stricken as sham and frivolous and judgment rendered for defendants. Plaintiff appealed.

The pleadings, covering 63 printed pages, are too lengthy to summarize. Plaintiff brought the suit as a stockholder of defendant securities company. The individual defendants are respectively the president, vice-president and secretary of that corporation. They also compose its board of directors. Prior to 1923 plaintiff and defendants Simons and Mixer were jointly engaged in acquiring and improving real estate in the city of St. Paul. In March, 1923, they organized the defendant corporation, Simons becoming president, Mixer vice-president, and plaintiff secretary and treasurer. They conveyed to the corporation the properties in which they were jointly interested and received therefor capital stock to the value of

[1]Reported in 218 N. W. 459.

their respective interests therein. The amount of stock so issued was 1,275 shares of the par value of $127,500. To acquire additional property and make improvements 110 additional shares were issued to various persons making a total of 1,385 shares of the par value of $138,500. One of the properties transferred to the corporation, as above stated, was a business and apartment building known as the Security building, which was subject to a mortgage of $50,000. The corporation took it at a valuation of $120,000, deducted the mortgage therefrom and paid the balance of $70,000 by issuing its capital stock therefor in that amount. This building was sold in 1925 for the sum of $122,500 paid in cash. Out of the proceeds of this sale the corporation paid the mortgage on the property and all its other debts, and also retired 385 shares of its capital stock. The retirement of the capital stock was accomplished by each stockholder's surrendering his pro rata part thereof and receiving its par value therefor, and all stockholders acquiesced in and approved the transaction.

Plaintiff continued as secretary and treasurer of the corporation until the annual stockholders' meeting in January, 1925, and received a salary of $200 per month. No other salaries were paid. At the stockholders' meeting in 1925 defendant Sandquist was elected a director in place of plaintiff and on the same day was elected secretary by the directors. No treasurer was elected. Since that date plaintiff has held no office in the corporation, and the corporation has paid no salaries to anyone.

At the time this suit was started the corporation owned two apartment buildings and certain other property, all free from encumbrance and of the approximate value of $100,000. The 1,000 shares of stock then outstanding were held, 435 shares by defendant Simons, 145 shares by defendant Mixer, 110 shares by plaintiff, 40 shares by defendant Sandquist, and the remainder in small lots by various parties.

Plaintiff in his complaint charged, in substance, that since the annual stockholders' meeting in 1925 Simons has controlled and managed the corporation and has mismanaged its affairs and misappropriated its funds. Plaintiff asked that an accounting be had

of the business and operations of the corporation since that date; that judgment be rendered against Simons for any amounts found due; that defendants be enjoined from disposing of or encumbering any of the property without an order of court; that a receiver be appointed to take charge of the corporation and wind up its business; and that the corporation be dissolved and the proceeds of its property distributed to the stockholders. .

The complaint sets forth at length and with an over-abundance of disparaging language the various matters in respect to which it charges mismanagement and misappropriation of funds. The answer takes up these several matters in detail and sets forth facts showing that there was no foundation for the charges. The reply put in issue all the allegations of the answer except as admitted. On defendants' motion, supported by various affidavits and opposed by the rebutting affidavit of plaintiff, the court struck the reply as sham and frivolous.

Plaintiff invokes the rule that upon a motion to strike a pleading as sham the court cannot try an issue but only determine whether there is a real issue to try. Segerstrom v. Holland Piano Mfg. Co. 160 Minn. 95, 199 N. W. 897. In his brief he specifies five matters in respect to which he insists there is an issue for trial:

1. Whether the corporation is solvent. There is no basis for a claim of insolvency. The corporation owes no debts, and its properties are unencumbered and producing an income.

2. Whether Simons has unlawfully usurped "the powers and duties of the corporation." There is nothing of substance in this claim. It appears merely that Simons as president has been acting as manager of the corporation in its ordinary business affairs without salary and without objection from anyone except plaintiff.

3. Whether Simons appropriated the unearned insurance premiums on the Security building which were returned when that building was sold. Both the answer and Simons' affidavit state that these returned premiums were received by and credited to the corporation, and plaintiff does not deny this in his rebuttal affidavit.

4. Whether Simons received a secret profit on the sale of the Security building. The corporation received $122,500 for this

building. Plaintiff claimed that the sale price was $126,200 and that Simons received the difference as a secret profit. This claim is based on the fact that in the preliminary negotiations for the sale the Middle West Investment Company, managed by Simons, made a contract with the purchaser to loan him $16,200 toward the purchase price, and that thereafter the purchaser with the aid of Simons procured a loan on the property from an insurance company of $110,000. Plaintiff claimed, apparently without any tangible basis therefor, that these two sums represented the selling price. But it was shown that the loan of $16,200 was never consummated or taken by the purchaser, he having obtained the necessary funds from other sources. Furthermore, the sale was made pursuant to a written contract which fixed the price at $122,500, and both Simons and the purchaser state that that sum was the amount actually paid. There is nothing to contradict or discredit these facts, and the court was amply justified in holding the charge false.

5. Whether Simons appropriated interest on corporation funds invested in tax certificates. The complaint alleged that Simons had invested some $29,000 of the money received for the Security building in tax certificates without authority, and alleged upon information and belief that he had taken the certificates in his own name. The answer alleged that under authority of the board of directors temporary investments were made in order to derive a revenue from the funds on hand; that some of these were in tax certificates; that all these investments had been repaid in full; and that the corporation had received the sum of $1,940.42 as interest thereon. Simons in his affidavit reiterated these facts. Plaintiff in his rebuttal affidavit does not dispute them, but states that the tax certificates bore interest at the rate of 12 per cent and that the interest thereon amounted to $2,922.20. The complaint contains no allegations covering the claim now made, and plaintiff's affidavit states no facts to substantiate it. These several certificates were redeemable at the pleasure of the landowners, and there is nothing to show when any of them were redeemed or how long any of them were held by the corporation.

It clearly appears from the record that the corporation has capital stock outstanding of the par value of $100,000 and owns property of substantially that value; that it owes no debts and its property is free from encumbrance; that the officers receive no salary and the only managerial expense is a commission of five per cent paid to a rental agency for looking after the properties, renting the apartments and collecting the rentals; that the officers have not done, and are not doing or threatening to do, anything to dissipate the property or impair its value; and that all the stockholders, including plaintiff, have received and are receiving in the form of dividends their pro rata share of the revenues available for distribution in that manner.

We concur in the conclusion of the learned trial court that plaintiff's charges were demonstrated to be unfounded by facts established beyond question, and that no issues remained for trial. The case is so devoid of merit that the somewhat caustic comments of the trial court are not surprising. We are not to be understood as indicating that the claims made by plaintiff, even if true, would justify appointing a receiver and putting the corporation into liquidation.

Judgment affirmed.